IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


UNITED STATES OF AMERICA                          PLAINTIFF/RESPONDENT


        V.                    Case No. 2:13-CR-20027-PKH-MEF


ESTEBAN ARREOLA                                   DEFENDANT/PETITIONER


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is the Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed November 24, 2014 (Doc. 36) and supplemented on December 11, 2014 (Doc. 40). The United States filed its Response on January 12, 2015. (Doc. 43) Petitioner did not file any reply. The matter is ready for Report and Recommendation.

### I. Background

On March 20, 2013, a Criminal Complaint was filed against Defendant/Petitioner, Esteban Arreola ("Arreola"), alleging that on or about March 14, 2013, Arreola was in possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and for being a felon in possession of a firearm, in violation of 21 U.S.C. § 922(g)(1). (Doc. 1) After being arrested on March 20, 2013, Arreola made his initial appearance before the Hon. James R. Marschewski on March 22, 2013, where he waived the issues of probable cause and detention. (Doc. 7) James B. Pierce ("Pierce"), Assistant Federal Public Defender, was appointed to represent Arreola. (Doc. 8)

-1-

On March 29, 2013, Arreola moved to substitute his counsel. (Doc. 10) In a Text Only Order entered on March 29, 2013, the Court granted Arreola's Motion, and retained counsel, Eddie N. Christian ("Christian"), replaced Pierce as Arreola's defense counsel.

On April 24, 2013, Arreola was named in a three-count Indictment, filed in the United States District Court for the Western District of Arkansas. (Doc. 12) Count One charged Arreola with knowingly possessing with the intent to distribute 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii).  Count Two charged Arreola with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Count Three charged Arreola with possessing a firearm at a place that he knew and had reasonable cause to believe was a school zone, in violation of 18 U.S.C. §§ 922(q)(2)(A) and 924(a)(4).

Arreola appeared for arraignment with his retained counsel on May 2, 2013, and he entered a not guilty plea to each count of the Indictment. (Doc. 16) On May 20, 2013, Christian filed a Motion for Discovery (Doc. 19), which the Court treated as a Notice of Request for Discovery pursuant to the Court's Pretrial Scheduling Order (Doc. 17). The government responded to Arreola's discovery request on May 21, 2013, and requested reciprocal discovery from Arreola. (Doc. 21)

On July 8, 2013, Arreola appeared with counsel before the Hon. P. K. Holmes, III, for a change of plea hearing. (Doc. 23) A written Plea Agreement was presented to the Court, and Arreola plead guilty to Count One and Count Three of the Indictment charging him with Possession with Intent to Distribute 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii), and Possession of a Firearm in a School Zone, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. 24, ¶ 1) The Court tentatively approved the Plea Agreement and ordered a Presentence Investigation Report ("PSR"). (Doc. 23)

An Initial PSR was prepared by the United States Probation Office on September 16, 2013. (Doc. 27) On October 3, 2013, the government advised that it had no objections to the Initial PSR. (Doc. 28) Also on October 3, 2013, Christian submitted one objection to the Initial PSR on behalf of Arreola requesting that some language be added in the offense conduct section of the PSR. (Doc. 29, ¶ 1) Christian also advised that "Defendant may ask the Court to consider a variance." (Doc. 29, ¶ 2)

On October 15, 2013, a Final PSR was submitted to the Court. (Doc. 30) U. S. Probation noted that "the investigative material is consistent with the defendant's request for additional language to the offense conduct," and that "the requested language is contained in paragraph 25 of the final presentence report." (Doc. 30-1)

The Final PSR determined that Arreola was accountable for 158.540 grams of actual methamphetamine and, as a result, Arreola's Base Offense Level was determined to be 34 pursuant to U.S.S.G. § 2D1.1(c)(3). (Doc. 30, ¶¶ 27, 35) A two-level increase for specific offense characteristics, i.e., possession of a dangerous weapon (including a firearm), was assessed pursuant to U.S.S.G. § 2D1.1(b)(1), resulting in an Adjusted Offense Level of 36. (Doc. 30, ¶¶ 26, 36, 40) After a three level reduction for acceptance of responsibility, Arreola's Total Offense Level was determined to be 33. (Doc. 30, ¶¶ 42-44) Arreola's criminal history resulted in a total criminal history score of 10 placing him in Criminal History Category V. (Doc. 30, ¶ 61) The statutory range of imprisonment for Count One called for a mandatory minimum of ten years and a maximum of life imprisonment. (Doc. 30, ¶ 84) The maximum statutory term of imprisonment for Count Three was five years, and the term of imprisonment for Count Three had to be imposed consecutively to Count One. (Doc. 30, ¶ 84) Arreola's advisory Guidelines sentencing range was determined to be 210 to

262 months imprisonment. (Doc. 30, ¶ 85)

Arreola appeared for sentencing on November 20, 2013. (Doc. 32) The Court made inquiry that Arreola was satisfied with his counsel, final approval of the Plea Agreement was expressed, and the Court imposed a low-end Guidelines sentence of 210 months imprisonment, apportioned with 200 months imprisonment on Count One and 10 months imprisonment on Count Three, to run consecutively, five years supervised release, no fine, and a $125.00 special assessment. (Doc. 32) Judgment was entered by the Court on November 21, 2013. (Doc. 34) Arreola did not pursue a direct appeal from the Judgment.

On November 24, 2014, Arreola filed his *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "Motion"). (Doc. 36) On November 25, 2014, the Court entered an Order giving Arreola until December 24, 2014 to provide the Court with the factual basis supporting his allegations or his Petition is subject to dismissal. (Doc. 38) On December 11, 2014, Arreola filed his Supplemental Motion under § 2255. (Doc. 40) The Motion, as supplemented, raises three grounds for relief, which are summarized as follows:

(1) Ineffective assistance of counsel when his counsel "failed to inform the Court that Petitioner/Government had enter (sic) into a written Plea Agreement with a guideline sentencing of 151 - 188 months;" when counsel failed to "file a timely written objection to the 10 months consecutive sentence based on a now applicable statute provision that did not mandate a Congressional imposed consecutive term of imprisonment;" when counsel failed to "argue any case law authority to the Court that would of aided the Court not to impose such a consecutive term;" and when counsel "[f]ailed to preserve or protect the record for further review for an unreasonable sentence imposed." (Doc. 40, p. 4)

-4-

(2) Violation of the Plea Agreement by the government when the government remained silent at sentencing and failed to inform the Court of the plea negotiations and the recommendations of 151 to 188 months Guidelines sentencing range. (Doc. 40, p. 5)

(3) Petitioner suffered an illegal/unconstitutional sentence and was denied effective assistance of counsel[1]. (Doc. 40, p. 7)

The undersigned notes that neither the original Motion (Doc. 36), nor the Supplemental Motion (40), is signed and verified by Arreola.

The United States' Response to the Motion was filed on January 12, 2015. (Doc. 43) Arreola did not file any reply.

The undersigned also notes that on December 8, 2014, Arreola filed a *pro se* Motion to Reduce Sentence based upon amendment to the United States Sentencing Guidelines reducing drug offense levels. (Doc. 39) An Unopposed Motion to Reduce Sentence was subsequently filed on Arreola's behalf by the Federal Public Defender. (Doc. 44) On April 14, 2015, the Court entered an Order granting the Motions to Reduce Sentence, and Arreola's sentence was reduced to 158 months on Count One, plus 10 months on Count Three, to run consecutively, for a total term of imprisonment of 168 months. (Doc. 46)

## II.  Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the

---

[1] This ground is a re-statement of Arreola's allegation in Ground One that his counsel was ineffective for failing to object to the 10 month consecutive sentence on Count Three.

maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). A thorough review of Arreola's Motion and the files and records of this case conclusively shows that Arreola is not entitled to relief, and the undersigned recommends the denial and dismissal of his Motion with prejudice without an evidentiary hearing.

### A. Lack of Signature and Verification

28 U.S.C. § 2242 provides that an "[a]pplication for a writ of habeas corpus shall be in writing *signed and verified* by the person for whose relief it is intended or by someone acting in his behalf." (Emphasis added.) Rule 2(b)(5), Rules Governing § 2255 Proceedings, similarly requires that the motion "be signed under penalty of perjury by the movant or by a person authorized to sign it for the movant." Arreola did not sign either his original Motion filed November 24, 2014 (Doc. 36, p. 13) or his Supplemental Motion filed December 11, 2014 (Doc. 40, p. 12).

A court may dismiss a petition that has not been signed and verified in compliance with the statutory requirements. *See Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990). While the Court's Order entered on November 25, 2014 (Doc. 38) directed Arreola to provide the Court with the factual basis supporting his allegations, no mention was made of compliance with the requirements for signature and verification. The United States has not raised any objection to

Arreola's failure to sign and verify his Motion. Given the history of this case, including the amount of time that has passed since the Motion was filed, and Arreola's *pro se* status, the undersigned does not believe that dismissing the Motion without prejudice is called for or justified. "The defects noted appear to be an oversight and do not deprive this Court of jurisdiction." *Hendricks*, 908 F.2d at 491. "They are thus defects that the Court, if it sees fit, may disregard." *Id*.; *see also Quinn v. Dooley*, 272 F.Supp.2d 839, 845 (D.S.D. 2003). The undersigned notes that Arreola did sign, although it is not verified, his Memorandum in Support of Attached § 2255 Motion to Vacate, Set Aside or Correct Sentence. (Doc. 41, p. 4) The undersigned will, therefore, proceed to address the merits of Arreola's claims.

### B.  Ineffective Assistance of Counsel Claims

To prove a claim of ineffective assistance of counsel, Arreola must demonstrate both that counsel's performance was deficient and that counsel's deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To establish the deficient performance prong of the *Strickland* test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." *Id*. at 688. Review of counsel's performance is deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689. To establish the prejudice prong of the *Strickland* test, one must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The United States Supreme Court has clarified that the proper prejudice analysis is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 842-43, 122 L.Ed.2d 180

(1993) (quoting *Strickland*, 466 U.S., at 687, 104 S.Ct., at 2064).

Although the two prongs of the *Strickland* analysis are described as sequential, courts are not bound to evaluate ineffective assistance of counsel claims in a mechanistic way. If a petitioner does not affirmatively prove prejudice, there is no need to address the performance prong. *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999). Thus, a court need not determine whether a defendant's counsel acted reasonably if a defendant has failed to show prejudice, as lack of prejudice can be dispositive. *United States v. DeRoo*, 223 F.3d 919, 925 (8th Cir. 2000), *citing United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). If it is easier to dispose of an ineffectiveness claim for lack of prejudice, the court should do so. *Strickland*, 466 U.S. at 697.

### 1. Validity of Arreola's Guilty Pleas

Arreola plead guilty to the offenses of conviction. When a guilty plea is entered by the movant, the focus of a collateral attack must remain limited to the nature of counsel's advice and the voluntariness of the guilty plea. *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984), *citing Tollett v. Henderson*, 411 U.S. 258, 266 (1973). As the Court in *Tollett* so eloquently observed:

> ". . . a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *He may only attack the voluntary and intelligent character of the guilty plea* by showing that the advise he received from counsel was not within the standards set forth in *McMann*[2].
>
> A guilty plea, voluntarily and intelligently entered, may not be

---

[2] *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases.").

vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge . . . And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, (internal citation omitted) it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings." *Id*. at 267. (Emphasis added.)

The rationale and ruling of *Tollett*, while a decision concerning a state prisoner's habeas claims, has been adopted by the Eighth Circuit for application to motions made by federal prisoners under 28 U.S.C. § 2255. *See Bass*, 739 F.2d at 406.

The standard for determining the validity of a guilty plea remains whether it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970), *citing Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969), *Machibroda v. United States*, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962), and *Kercheval v. United States*, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927). "While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)). A defendant has a heavy burden to overcome those admissions and show that his guilty plea was involuntary. *See Blackledge v. Allison*, 431 U.S. 63, 72-74, 97 S.Ct. 1621, 1628-29, 52 L.Ed.2d 136 (1977).

In the present case, Arreola was represented by experienced retained counsel, Eddie N. Christian, throughout the criminal proceedings leading to and including the change of plea hearing.

Prior to the change of plea hearing, Christian had represented Arreola at the arraignment (Doc. 16); he had prepared and filed an appropriate notice of discovery request pursuant to the Court's Pretrial Scheduling Order (Doc. 19); and, he had negotiated a written Plea Agreement with the Assistant United States Attorney prosecuting the case. Christian carefully reviewed the Plea Agreement with Arreola before obtaining Arreola's signature on it (Doc. 24, ¶ 27(a)). The written Plea Agreement informed Arreola of the counts of conviction, being Count One and Count Three of the Indictment (charging Arreola with Possession with Intent to Distribute 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii), and Possession of a Firearm in a School Zone, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2)), and the count to be dismissed. (Doc. 24, ¶ 1) Arreola acknowledged that he had fully discussed with his counsel the facts of the case and the elements of the crimes to which he was pleading guilty; he agreed that he had committed each of the elements of the crimes to which he was pleading guilty; and, he admitted the factual basis for the pleas. (Doc. 24, ¶ 3) The Plea Agreement advised Arreola of his constitutional and statutory rights, including the right to persist in his plea of not guilty. (Doc. 24, ¶ 4) By signing the Plea Agreement, Arreola acknowledged that he had read the agreement and had carefully reviewed every part of it with his counsel; that he fully understood the Plea Agreement and was not under the influence of anything that could impede his ability to fully understand it; that no promises, agreements, understandings, or conditions had been made or entered into in connection with the decision to plead guilty except those set forth in the Plea Agreement; that he was satisfied with the legal services provided by his defense counsel in connection with the Plea Agreement and matters related to it; and, that he entered into the Plea Agreement freely, voluntarily, and without reservation, and that his desire to enter a plea of guilty was not the result of any threats or coercion.

(Doc. 24, ¶ 26)

During the change of plea hearing on July 8, 2013, Arreola was sworn on oath and examined about the offense; the Court inquired of Arreola about his age and level of education; inquiry was made as to whether Arreola was under the influence of alcohol or drugs, and whether Arreola was able to comprehend the proceedings; inquiry was made as to whether Arreola was satisfied with his counsel; the possible severity of sentence was explained, as well as Arreola's constitutional and statutory rights; and, upon such inquiry in open court, the Court determined that Arreola's guilty pleas to Count One and Count Three of the Indictment were voluntary and intelligent, and that there was a factual basis to support the guilty pleas. (Doc. 23) Sentencing was deferred pending presentence investigation.

Arreola does not specifically allege in his § 2255 Motion that his claims of ineffective assistance of counsel rendered his guilty pleas involuntary, unintelligent, and invalid; but, instead, he claims that his counsel failed to inform the Court that he and the United States had entered into a written plea agreement with a Guidelines sentencing range of 151 to 188 months, and that his counsel failed to file a timely written objection to the 10 month consecutive sentence or argue any case law authority that would have aided the Court to not impose a consecutive term of imprisonment under 18 U.S.C. §§ 922(q)(2)(A) and 924(a)(4). (Doc. 40, p. 4) Both of these matters relate to sentencing, and Arreola states no facts to show that his counsel's advice during plea negotiations "fell below an objective standard of reasonableness," and that there exists "a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1103 (8th Cir. 2011).

As noted just above, Arreola acknowledged in the written Plea Agreement, which he signed,

that he had fully discussed the facts of the case with defense counsel; that he had read the agreement and had carefully reviewed "every part of it" with defense counsel; and, that he was satisfied with the legal services provided by defense counsel "in connection with the Plea Agreement and matters related to it." (Doc. 24, ¶¶ 3, 26) Contrary to Arreola's allegations, the written Plea Agreement does not contain any provision for a Guidelines sentencing range of 151 to 188 months, and it sets forth in plain language the following: (¶ 13) that the Court shall consult and take into account the United States Sentencing Commission Guidelines in determining the sentence, but that the Court is not bound by the Guidelines and may sentence the Defendant to any sentence within the statutory range; (¶ 14) that the agreement does not promise a specific sentence, and the Defendant agrees that any discussions regarding the possible Guidelines range which might be applicable to his case are merely an attempt to "guess at what appears to be the correct Guideline range," that such discussions do not bind the Court, and that "the actual range may be greater than contemplated by the parties;" (¶ 22) that the parties agree that nothing in the agreement binds the Court to make any particular application of the Sentencing Guidelines or hand down any specific sentence; and, (¶ 28) that Arreola and his counsel acknowledge that the Plea Agreement constitutes the entire agreement of the parties, and "there are no oral agreements or promises which have been made to induce the defendant to change his/her plea to guilty." Concerning the consecutive nature of any sentence to be imposed for Count Three, the Plea Agreement clearly provides that "[a]ny term of imprisonment imposed as to count 3 must run consecutive to any term of imprisonment imposed on count 1." (Doc. 24, ¶ 10)

To the extent Arreola's § 2255 Motion does not specifically challenge the voluntary and intelligent character of his guilty pleas, it is deficient and subject to dismissal.

Since Arreola has failed to show that his counsel's performance was deficient regarding this

-12-

issue, there is no need to address the second *Strickland* prong of prejudice. *See United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003) (if a movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim). Even so, Arreola has not asserted that but for his counsel's allegedly deficient performance he would not have pleaded guilty and would have insisted on going to trial; therefore, he has not met the prejudice requirement where a guilty plea is challenged. *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) (where a guilty plea is challenged under the second prong of the *Strickland* test the "defendant must show that . . . he would not have pleaded guilty and would have insisted on going to trial); *United States v. Vennes*, — F.Supp.2d —, 2015 WL 1954368 at p. 11 (D.MN 2015).

    **2. Failure to Inform Court of Plea Agreement for 151 - 188 Month Sentencing Range**

    Arreola argues in Ground One of his § 2255 Motion that his counsel was ineffective when he "failed to inform the Court that Petitioner/Government had enter (sic) into a written Plea Agreement with a guideline sentencing of 151 - 188 months." (Doc. 40, p. 4) The argument is contrary to the record and has no merit.

    To begin with, Arreola sets forth no facts to support his allegation that such an agreement was ever reached so as to require counsel to inform the Court of it. Vague and conclusory allegations are insufficient to state a ground for relief under 28 U.S.C. § 2255. *Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir. 1986). *See also: Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *Smith v. United States*, 677 F.2d 39, 41 (8th Cir. 1982) (conclusory allegations, unsupported by any specifics, are subject to summary dismissal); *Bryson v. United*

*States*, 268 F.3d 560, 562 (8th Cir. 2001) (brief, conclusory allegations that failed to cite to the record insufficient to support claims of ineffective assistance of counsel). Even *pro se* litigants must state specific facts in support of their claims regarding counsel's allegedly deficient performance. *Saunders v. United States*, 236 F.3d 950, 952-53 (8th Cir. 2001). Arreola does not. Other than asserting that his counsel failed to inform the Court of a written Plea Agreement for a Guidelines sentencing range of 151 - 188 months imprisonment, his Motion is completely devoid of any facts to support that any such plea agreement existed.

Moreover, the express language contained in the written Plea Agreement presented to the Court at the change of plea hearing on July 8, 2013 makes it clear that there was no agreement for any specific sentence or sentencing range. By signing the written Plea Agreement, Arreola acknowledged that he had fully discussed the facts of the case with defense counsel; that he had read the agreement and had carefully reviewed "every part of it" with defense counsel; and, that he was satisfied with the legal services provided by defense counsel "in connection with the Plea Agreement and matters related to it." (Doc. 24, ¶¶ 3, 26) In stark contrast to Arreola's allegations, the written Plea Agreement does not contain any provision for a Guidelines sentencing range of 151 to 188 months. Instead, it states that the Court shall consult and take into account the United States Sentencing Commission Guidelines in determining the sentence, but that the Court is not bound by the Guidelines and may sentence the Defendant to any sentence within the statutory range. (Doc. 24, ¶ 13) The Plea Agreement makes clear that it "does not promise a specific sentence," and that while discussions have taken place concerning the possible Guidelines range which might be applicable to the case, Arreola agreed that any such discussions were merely an attempt to "guess at what appears to be the correct Guideline range," that such discussions do not bind the Court, and that "the

-14-

actual range may be greater than contemplated by the parties." (Doc. 24, ¶ 14) The parties also agreed that nothing in the written Plea Agreement bound the Court to make any particular application of the Sentencing Guidelines or hand down any specific sentence. (Doc. 24, ¶ 22) Finally, Arreola and his counsel acknowledged that the written Plea Agreement constituted the entire agreement of the parties, and "there are no oral agreements or promises which have been made to induce the defendant to change his/her plea to guilty." (Doc. 24, ¶ 28)

In light of such clear and unambiguous language in the written Plea Agreement presented to the Court, and approved by the Court, Arreola cannot establish deficient performance on the part of his counsel for failing to inform the Court that he and the United States had entered into a written Plea Agreement based on a Guidelines sentencing range of 151 - 188 months imprisonment. "Counsel cannot have been ineffective for standing silent when the Government 'failed' to keep mythical promises." *Vennes*, 2015 WL 1954368 at p. 12, citing *Campbell v. Smith*, 770 F.3d 540, 547 (7th Cir. 2014) ("[I]f there was no breach [of the plea agreement] ... defense counsel's failure to object was not ineffective assistance.").

Even if his counsel had informed the Court that he and the United States had entered into a written Plea Agreement based on a Guidelines sentencing range of 151 - 188 months imprisonment, Arreola fails to demonstrate that the outcome of the proceedings would have been any different. This is because the Court was not bound by the Guidelines and could have sentenced Arreola to any sentence within the statutory range. For Count One that was a minimum of not less then ten (10) years with a maximum of life imprisonment. For Count Three that was a maximum of five (5) years imprisonment, which term must run consecutive to any term of imprisonment imposed for Count One. Arreola acknowledged that nothing bound the Court to make any particular application of the

Sentencing Guidelines or hand down any specific sentence. (Doc. 24, ¶ 22(b) and (c)) Accordingly, Arreola's claim fails as he has not shown any prejudice from his counsel's allegedly deficient performance.

### 3. Failure to Object to Consecutive Sentence

Arreola also argues, in Ground One of his § 2255 Motion, that his counsel was ineffective when he "failed to file a timely written objection to the 10 month consecutive sentence," and that counsel "failed to argue any case law authority to the Court that would have aided the Court not to impose such a consecutive term." (Doc. 40, p. 4) Arreola asserts that ". . . a now applicable statute provision . . . did not mandate a Congressional imposed consecutive term of imprisonment." (Doc. 40, p. 4) Arreola fails to share with the Court any legal authority to support his assertion. Upon thorough consideration of Arreola's claim, the undersigned has determined that it has no legal basis.

18 U.S.C. § 924(a)(4)[3] provides, in pertinent part:

> "Whoever violates section 922(q) shall be fined under this title, imprisoned for not more than 5 years, or both. Notwithstanding any other provision of law, the term of imprisonment imposed under this paragraph *shall not run concurrently* with any other term of imprisonment imposed under any other provision of law. . . ." (Emphasis added.)

The statute clearly requires that the term of imprisonment imposed upon a conviction of 18 U.S.C. § 922(q) shall run consecutively to a sentence imposed under any other provision of law. This

---

[3] On June 26, 2015, the United States Supreme Court decided *Johnson v. United States*, 135 S.Ct. 2551 (2015), which held that imposing an increased sentence under the residual clause of the Armed Career Criminal Act (ACCA) violates the Constitution's guarantee of due process. The Court in *Cole v. United States*, 2015 WL 4249362 (W.D.TN. July 13, 2015) declined to extend the holding in *Johnson* because Cole's sentence was not affected by the ACCA. Similarly, Arreola's sentence was not affected by the ACCA, and the undersigned finds that the Supreme Court's decision in *Johnson* has no impact on this case.

is also reflected in the U.S. Sentencing Guidelines § 2K2.5, Commentary, Application Note 3, which provides that, "*a sentence of imprisonment under 18 U.S.C. § 922(q) must run consecutively to any sentence of imprisonment imposed for any other offense.*" U.S. Sentencing Guidelines Manual § 2K2.5 cmt. n.3 (U.S. Sentencing Comm'n. 2013).

Here, Arreola's sentence complied with the statute and the applicable United States Sentencing Guideline. Based upon a total offense level of 33, and a criminal history category of V, Arreola's advisory Guidelines range for imprisonment was 210 to 262 months. The Court sentenced Arreola at the low end of the Guidelines range to a total of 210 months. (Doc. 34) The Court correctly apportioned (pursuant to U.S. Sentencing Guidelines § 2K2.5, Commentary, Application Note 3) the sentence between Count One (200 months) and Count Three (10 months, to run consecutive to the sentence imposed for Count One). Because the Court correctly sentenced Arreola, his counsel cannot be faulted for failing to raise a non-meritorious objection to the consecutive sentence on Count Three. *See Blankenship v. United States*, 159 F.3d 336, 338 (8th Cir. 1998) (no prejudice from counsel's failure to pursue non-meritorious issue); *Holloway v. United States*, 960 F.2d 1348, 1356 (8th Cir. 1992) (holding there can be no prejudice where counsel fails to raise a non-meritorious issue).

### C. Breach of Plea Agreement Claim

Arreola claims that the United States violated the Plea Agreement. He asserts that he was "led to believe by his counsel that he would only be subject to a 151/188 months term of imprisonment," and that the "Government violated the Plea Agreement when it remained silent at the sentencing hearing and for failure to inform the Court of the plea negotiations held and the recommendations of 151 to 188 months guideline sentencing range." (Doc. 40, p. 5) The United

-17-

States contends that Arreola has procedurally defaulted this claim and, in any event, it is otherwise without merit. The undersigned agrees.

### 1. Procedural Default

The United States Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982) (internal citations omitted). Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). The circumstances under which a guilty plea may be attacked on collateral review are strictly limited, and "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546-47, 81 L.Ed.2d 437 (1984). Even the voluntariness and intelligence of a guilty plea can be attacked on collateral review *only* if first challenged on direct review. "Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998) (internal quotation marks and citation omitted).

In this case, Arreola did not pursue any relief on direct appeal. In failing to do so, Arreola procedurally defaulted the breach of plea agreement claim he now raises. Breach of plea agreement claims, such as Arreola's, are subject to the doctrine of procedural default. *See, e.g., United States v. Young*, 77 Fed. Appx. 708, 709 (5th Cir. 2003) (unpublished) (dismissal of § 2255 claim affirmed because defendant had not raised the issue on direct appeal and had not established cause and prejudice for the default); *United States v. Nelson*, 372 Fed.Appx. 863, 865 (10th Cir. 2010)

(unpublished) (§ 2255 is not available to defendant on breach of plea agreement claim where issue was not raised on direct appeal absent a showing of cause and prejudice); *United States v. Sullivan*, 241 Fed.Appx. 217, 218-19 (5th Cir. 2007) (unpublished) (same); *Coleman v. United States*, 318 F.3d 754, 760 (7th Cir. 2003) (same); and, *Whitepipe v. Weber*, 536 F.Supp.2d 1070, 1105 (D.S.D. 2007) (procedural default of breach of plea agreement claim prevented federal habeas review absent a showing of cause and prejudice).

This procedural default may be excused only if Arreola "can show both (1) a cause that excuses the default, and (2) actual prejudice from the errors that are asserted." *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997) (quoting *Bousley v. Brooks*, 97 F.3d 284, 287 (8th Cir. 1996)); *Apfel*, 97 F.3d at 1076; and, *Frady*, 456 U.S. at 167-68. "For cause to exist, the external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S.Ct. 1454, 1472, 113 L.Ed.2d 517 (1991).

Arreola makes no such showing here. Arreola fails to demonstrate how the factual or legal basis for his breach of plea agreement claim was not reasonably available to him in time to pursue relief on direct appeal. Arreola alleges that he ". . . discovered for the first time at sentencing, that the Court was not aware of any of the negotiations that had taken place between the parties. . .," and that the "Government violated the Plea Agreement when it remain (sic) silent at the sentencing hearing and for failure to inform the Court of the plea negotiations held and the recommendations of 151 to 188 months guideline sentencing range." (Doc. 40, p. 5) Arreola's allegations show that, at least as of the date of sentencing, he was aware that the United States "remain[ed] silent at the sentencing hearing" and "fail[ed] to inform the Court of the plea negotiations." These actions,

-19-

according to Arreola, form the basis for his breach of plea agreement claim, and he was clearly aware of these actions at the time of his sentencing. He was, therefore, aware of the factual basis for his claim in time to pursue relief on direct appeal. He simply failed to do so.

Further, there is no assertion by Arreola that some interference by government officials, or some external impediment, prevented him from raising his breach of plea agreement claim on direct appeal.

Since Arreola has not shown adequate cause to overcome the procedural bar in his case, the Court need not consider the issue of actual prejudice. *Ashker v. Class*, 152 F.3d 863, 871 (8th Cir. 1998) (citing *Engle v. Isaac*, 456 U.S. 107, 134 n. 43, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982)). Even so, Arreola neither asserts nor demonstrates a miscarriage of justice through actual innocence. He has not challenged the voluntary and intelligent nature of his guilty pleas, but merely avers that he was "led to believe" that he would only be subject to a 151 to 188 month term of imprisonment. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup v. Delo*, 513 U.S. 298, 316, 115 S.Ct. 851, 861, 130 L.Ed.2d 808 (1995).

Arreola has failed to establish "cause and prejudice" to overcome the procedural default of his breach of plea agreement claim.

## 2.  No Breach of the Plea Agreement

Even if Arreola's breach of plea agreement claim is justiciable, it nonetheless lacks merit and cannot succeed. Arreola alleges that the "Government violated the Plea Agreement when it remain (sic) silent at the sentencing hearing and for failure to inform the Court of the plea negotiations held

and the recommendations of 151 to 188 months guideline sentencing range." (Doc. 40, p. 5) It is evident from the record that there was no promise by the United States to recommend a Guidelines sentencing range of 151 to 188 months imprisonment.

It is well established that "when a guilty plea rests on a promise made by the prosecutor, so that it can be said to be part of the inducement or consideration for the plea, that promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971); *See also United States v. Fowler*, 445 F.3d 1035, 1037 (8th Cir. 2006). Whether a promise is made in the context of a plea agreement is a question of fact. *United States v. Halford*, 948 F.2d 1054, 1056 (8th Cir. 1991). Yet where, as a matter of fact, the plea agreement does not contain the promise alleged to have been made and broken, no due process violation exists and habeas relief may be properly denied. *Trusell v. Bowersox*, 447 F.3d 588, 591 (8th Cir.), *cert. denied* 549 U.S. 1034, 127 S.Ct. 583, 166 L.Ed.2d 434 (2006). The party asserting the breach has the burden of establishing it. *United States v. Raifsnider*, 663 F.3d 1004, 1009 (8th Cir. 2011).

The record before the Court demonstrates that the Plea Agreement did not include a promise that Arreola would only be subject to a Guidelines sentencing range of 151 to 188 months imprisonment. The express language of the written Plea Agreement makes it abundantly clear that there was no promise regarding the sentencing range that would be applicable to Arreola's case.

By signing the Plea Agreement, Arreola acknowledged that he had read the agreement and had carefully reviewed every part of it with his counsel; that he fully understood the Plea Agreement and was not under the influence of anything that could impede his ability to fully understand it; and, *that no promises, agreements, understandings, or conditions had been made or entered into in connection with the decision to plead guilty except those set forth in the Plea Agreement.* (Doc. 24,

¶ 26) (Emphasis added.) Contrary to Arreola's allegations, the written Plea Agreement does not contain any provision for a Guidelines sentencing range of 151 to 188 months, and it sets forth in unambiguous language: that the Court shall consult and take into account the United States Sentencing Commission Guidelines in determining the sentence, but *that the Court is not bound by the Guidelines and may sentence the Defendant to any sentence within the statutory range* (¶ 13); that the agreement *does not promise a specific sentence*, and the Defendant agrees that *any discussions regarding the possible Guideline range which might be applicable to his case are merely an attempt to guess at what appears to be the correct Guideline range*, that such discussions do not bind the Court, and that *the actual range may be greater than contemplated by the parties* (¶ 14); that the parties agree that *nothing in the agreement binds the Court to make any particular application of the Sentencing Guidelines or hand down any specific sentence* (¶ 22); and, in an integration clause, that Arreola and his counsel acknowledge that the Plea Agreement constitutes the entire agreement of the parties, and *there are no oral agreements or promises which have been made to induce the defendant to change his/her plea to guilty* (¶ 28). (Emphasis added.) Concerning the consecutive nature of any sentence to be imposed for Count Three, the Plea Agreement clearly provides that "[a]ny term of imprisonment imposed as to count 3 must run consecutive to any term of imprisonment imposed on count 1." (Doc. 24, ¶ 10)

During the change of plea hearing on July 8, 2013, Arreola was sworn on oath and examined about the offense; the Court inquired of Arreola about his age and level of education; inquiry was made as to whether Arreola was under the influence of alcohol or drugs, and whether Arreola was able to comprehend the proceedings; inquiry was made as to whether Arreola was satisfied with his counsel; the possible severity of sentence was explained, as well as Arreola's constitutional and

statutory rights; and, upon such inquiry in open court, the Court determined that Arreola's guilty pleas to Count One and Count Three of the Indictment were voluntary and intelligent, and that there was a factual basis to support the guilty pleas. (Doc. 23)

The facts in Arreola's case are similar to other cases where breach of plea agreement claims have been summarily denied without an evidentiary hearing. *See, e.g., Trussell*, 447 F.3d at 591 (review of the record demonstrated that the plea agreement did not include a promise that Trusell would receive an opportunity for probation); *United States v. Smith*, 429 F.3d 620, 630 (6th Cir. 2005) (no evidence to overcome integration clause; no promise for one level reduction under U.S.S.G. § 3E1.1(b)); *Whitepipe*, 536 F.Supp.2d at 1105-06 (review of the record showed no promise to recommend an indeterminate prison term of no less than five years and no more than fifteen years); and, *Vennes*, 2015 WL 1954368 at pp. 7-8 (review of the record showed no promise to remain silent at sentencing, to inform the court that defendant was less culpable than another, to move for a full 3-point reduction for acceptance of responsibility, and to allow defendant to argue, unopposed, about the importance of his charitable work).

Arreola has failed to meet his burden of establishing that the United States breached the written Plea Agreement (Doc. 24) presented to and approved by the Court. The Court need not accept as true those allegations contradicted by the record, inherently incredible, or conclusions rather than statements of fact. *Tinajero-Ortiz*, 635 F.3d at 1105. Here, the alleged promise of a Guidelines sentencing range of 151-188 months imprisonment is not found within the Plea Agreement, which contained an integration clause. Arreola's statement under oath made during the change of plea colloquy confirmed that no promises or representations had been made other than those contained in the written Plea Agreement. The express provisions of the Plea Agreement, which

Arreola acknowledged by signing the Plea Agreement, advised Arreola that the Court may impose any sentence within the statutory range, that discussions concerning the possible Guidelines range are merely an attempt to guess at what appears to be the correct Guidelines range, and that the actual range may be greater than contemplated by the parties. In light of the record before the Court, the undersigned finds Arreola's allegation that the United States breached the Plea Agreement to be inherently incredible.

### D.  No Evidentiary Hearing Is Warranted

A movant is not entitled to an evidentiary hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the [movant] is entitled to no relief." *Nguyen v. United States*, 114 F.3d 699, 703 (1997), quoting from *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985). Such are the circumstances in this case.

For the reasons and upon the authorities discussed above, the undersigned finds Arreola's allegations to be contradicted by the record, inherently incredible, or conclusions rather than statements of fact, and the undersigned does not believe an evidentiary hearing is necessary. The Court need not hold a hearing to determine, for example, whether the parties discussed including a recommendation of a Guidelines sentencing range of 151 to 188 months imprisonment in the written Plea Agreement because even if such discussions were had, Arreola is foreclosed from relief due to the express - and contrary - terms of the written Plea Agreement. Accordingly, the undersigned recommends the summary dismissal of Arreola's § 2255 Motion without an evidentiary hearing.

### III.  Conclusion

For the reasons and upon the authorities discussed above, Arreola's claims are unsupported by the record in this case. I recommend that Arreola's Motion, filed under 28 U.S.C. § 2255, be

-24-

DISMISSED with PREJUDICE.

The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 29th day of July, 2015.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

-25-